UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARL GILLARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 11 C 3440 |
| | ) |
| CITY OF CHICAGO, CHICAGO POLICE | ) |
| OFFICERS LOU LAURENZANA[1] and | ) |
| JENNY MOLDA, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

Now before the Court is Defendants' City of Chicago's and Police Officers Lou Laurenzano's ("Laurenzano") and Jenny Molda's ("Molda") (collectively "Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth more fully below, Defendants' motion for summary judgment is granted in part and denied in part.

---

[1] This defendant's name is spelled two different ways in the docket. In the complaint and answer to the complaint, it is spelled Lou Laurenzana. In plaintiff's motion to reopen the case, dated December 26, 2011, and many subsequent filings, it is spelled Lou Laurenzano. In the body of the opinion, the Court will use the spelling Lou Laurenzano because that is the spelling used at this defendant's deposition.

## BACKGROUND[2]

This case stems from Plaintiff Carl Gillard's ("Gillard") March 11, 2010 arrest by Chicago Police Officers Laurenzano and Molda. At all times relevant to this case, Laurenzano and Molda were employed by the City of Chicago as police officers and were acting within the scope of their employment and under color of law. On that date, around 6:00 p.m., Laurenzano and Molda were driving in a marked squad car near 6300 or 6400 South State Street. At the same time and location, Gillard was driving his mother's 2007 Chevy Impala ("vehicle"). In their depositions, Laurenzano and Molda both stated that they stopped the vehicle because they observed Gillard accelerate through a yellow light. Gillard claims that the light did not turn yellow until he was already through the intersection. After Laurenzano and Molda pulled the vehicle over, they approached it and Laurenzano asked Gillard for his driver's license and proof of insurance.

According to Laurenzano, he then asked Gillard to exit the vehicle for the officers' safety. Gillard claims that he was told to exit the vehicle so that Laurenzano could search it, not for their safety. After Gillard exited the vehicle, he told the officers that he had a knife. One of the officers patted Gillard down and found the knife. Then, Gillard was handcuffed and placed in the backseat of the squad car.

---

[2]The following facts are taken from the answer and the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1. The Court reviews each Local Rule 56.1 statement and disregards any argument, conclusion or assertion unsupported by the evidence in the record. *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006).

The officers claim that Gillard requested his wallet, phone and a black bag from the vehicle. Laurenzano retrieved a bag from the trunk of the vehicle. According to Laurenzano, while he was checking to make sure the bag did not contain weapons, he found pills in an unmarked pill bottle inside of the bag. Gillard denies that he asked the officers to retrieve anything from the vehicle, or that he consented to a search of the vehicle or bag.

The officers arrested Gillard and brought him to the Third District Police Station. Gillard was ultimately charged with possession of a controlled substance and possession of methamphetamine in violation of 720 ILCS 570/402© and 720 ILCS 646/60(a). Molda also issued Gillard a written traffic ticket. However, based on Gillard's deposition testimony, it is unclear when he received the ticket. Gillard may not have received the paper ticket until he was released from custody on June 24, 2010.

On the ticket, Molda put an "x" in the box next to "disobey solid red signal." Molda also wrote in the other offense section of the ticket "accelerated through yellow light turning red." At her deposition, Molda stated that she "observed [the] vehicle go through a yellow light." The vehicle did not run a red light. Molda further explained that when she issued the ticket, she did not have the code for accelerating through a yellow light, so she marked the "disobey solid red signal" box on the ticket because that was the next "closest code." Molda stated that she planned to amend the ticket when she

went to court for a hearing on the ticket. The record does not indicate that the ticket was ever amended, or that there was a court hearing on the ticket.

Gillard remained in custody at the Cook County Jail on the possession charges until June 24, 2010. On that date, a Cook County judge granted Gillard's motion to quash and suppress evidence and ordered Gillard released after that Cook County State's Attorney's Office entered a *nolle prosequi* on all pending charges. Records from the criminal proceeding are not part of the record in the instant case, so the Court does not know the bases on which the state court granted Gillard's motion.

The Illinois Secretary of States' driver's LEADS abstract indicates that Gillard was convicted of "disregarding a traffic control light" on April 29, 2010. The abstract does not indicate whether the disregarded traffic control light was red or yellow. It is also not clear from the record before the Court whether there was a hearing on the ticket. The portion of the ticket indicating a hearing date and time was left blank. Instead, there was an "x" in the box stating "you must either mail response or log onto [www.cookcountyclerkofcourt.org](www.cookcountyclerkofcourt.org) to pay within 7 days." Because he could not post bail, Gillard remained in custody from the time of his March 11, 2010 arrest until his release on June 24, 2010. During that time, Gillard did not contest the ticket. However, Gillard denies that he accelerated through a yellow light on March 11, 2010.

Gillard filed the instant action pursuant to 42 U.S.C. § 1983 seeking redress for an alleged false arrest (Count I) and unlawful search (Count II) in contravention of his

-4-

Fourth Amendment right to be secure in his person from unreasonable search and seizure. Gillard also asserts state law claims for respondeat superior and indemnification (Count III). Defendants seeks summary judgment in their favor as to all three counts in the complaint and a finding of qualified immunity.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Winsley v. Cook Cnty.*, 563 F.3d 598, 602-03 (7th Cir. 2009). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party. *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). In considering a motion for summary judgment, a court construes all facts and draws all reasonable inferences in favor of Gillard, the non-moving party. *Smith v. Hope Sch.*, 560 F.3d 694 (7th Cir. 2010).

## DISCUSSION

### I. False Arrest (Count I)

Defendants move for summary judgment as to Gillard's false arrest claim, arguing that it is barred by *Heck v. Humphry*, 512 U.S. 477, 486-87 (1994). In *Heck v. Humphry*, the Supreme Court held that in order for a plaintiff to recover damages under

Section 1983 for harm "caused by actions whose unlawfulness would render a conviction or sentence invalid, [he] must first prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. This requirement reflects the strong judicial policy against creating conflicting results from the same set of underlying facts. *Id*. at 484. This "*Heck* rule" is intended to prevent a plaintiff from collaterally attacking a criminal conviction through a civil suit. *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006). If a judgment in Gillard's favor on his false arrest claim would imply the invalidity of a conviction, then the claim is not cognizable under Section 1983. *Id*. at 487.

Defendants argue that Gillard's conviction on the traffic ticket is a bar to the instant Section 1983 false arrest claim under *Heck*. The uncontested evidence demonstrates Gillard was convicted for "disregarding a traffic control light" on April 29, 2010. The factual basis for Gillard's Section 1983 false arrest claim arises from the same traffic incident. Further, Gillard submits no evidence indicating that the conviction has been reversed, expunged, or called into question by any of the methods provided for in *Heck*. In light of Gillard's conviction arising from the same events that led to his false arrest claim and his failure to appropriately and successfully challenge the

conviction, we find that *Heck* bars Gillard's Section 1983 false arrest claim. Defendants' motion for summary judgment on Count I is granted.

## II. Unlawful Search (Count II)

Defendants also move for summary judgment on Gillard's unlawful search claim, arguing that the search of his person and the passenger compartment of the vehicle he was driving was incident to a lawful arrest. Defendants further argue that Gillard consented to the search of his bag. Gillard denies consenting to any searches. A determination of these search issues involves resolution of factual disputes. The Court cannot determine the lawfulness of the search of the bag without first resolving the consent dispute. Accordingly, summary judgment is denied as to Gillard's unlawful search claim.

## III. Respondeat Superior and Indemnification Claims (Count III)

Defendants' motion for summary judgment is granted as to Gillard's respondeat superior claim in Count III of the complaint. The Seventh Circuit has held that there is no respondeat superior liability under Section 1983. *Palka v. City of Chicago*, 662 F.3d 428, 343 (7th Cir. 2011). Summary judgment is denied as to Gillard's indemnification claim against the City of Chicago.

## IV. Qualified Immunity

Defendants' request for a finding of qualified immunity is denied. The issue of qualified immunity is a question of law for the court to decide. *Alvarado v. Picur*, 859

F.2d 448, 450 (7th Cir. 1988). "Qualified immunity shields a government official from liability for civil damages unless his or her conduct violates a clearly established principle or constitutional right of which a reasonable person would have known at the time." *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012). The test for qualified immunity is "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Betker,* 692 F.3d at 860 (quoting *McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012). "Although the privilege of qualified immunity is a defense, the plaintiff bears the burden of defeating it." *Betker*, 692 F.3d at 860.

There are genuine issues of material fact in this case that cannot be resolved on summary judgment. Taking the disputed facts in the light most favorable to Gillard, as the Court must do, there is an argument that the defendant officers violated Gillard's clearly established Fourth Amendment right to be free from unlawful search and seizure. Gillard claims that the search of his person and vehicle were not incident to a lawful traffic stop and that he did not give consent for the search of his bag. Accordingly, Molda and Laurenzano are not entitled to finding of qualified immunity on summary judgment.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted as to Gillard's Section 1983 false arrest claim in Count I and respondeat superior claim in Count III and denied as to the remaining claims in the complaint and defendants' request for a finding of qualified immunity.

_____
Charles P. Kocoras
United States District Judge

Dated: February 7, 2013