# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CARL GILLARD, | ) |
| Plaintiff, | ) |
| | ) No. 11-cv-03440 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| CITY OF CHICAGO, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carl Gillard brought this action against the City of Chicago ("City") and Chicago Police Department officers Lou Laurenzana and Jenny Molda claiming that he was the victim of an unlawful search.[1] After a three-day trial, a jury returned a verdict in favor of Gillard and against Defendant Laurenzana and awarded Gillard compensatory damages in the amount of $1.00, but declined to award punitive damages.[2] Before the Court is Gillard's motion for a new trial on the issue of damages only. (Dkt. No. 102.) For the reasons stated below, Gillard's motion is denied.

## BACKGROUND

The evidence adduced at trial showed that, on March 11, 2010, Gillard was stopped by Officer Laurenzana and Officer Molda for allegedly accelerating through a yellow light. Gillard was patted down by Officer Laurenzana and his vehicle and trunk were searched. According to Officer Laurenzana, as he was about to pat down Gillard, Gillard told Officer Laurenzana that he was carrying a pocket knife for protection from gang members who he believed might retaliate

---

[1] The Court previously granted summary judgment on Gillard's claims for false arrest and *respondeat superior*. (Dkt. No. 51.)

[2] Defendant Molda's oral motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 was granted without objection on the second day of trial. (Dkt. No. 99.)

against him. Officer Laurenzana also claims that Gillard informed him that Gillard previously had been imprisoned for a double-murder conviction. (As noted below, the jury did not hear the exact offense for which Gillard had been convicted but instead learned only that it was a violent felony.)

After Officer Laurenzana found a knife on Gillard's person, he arrested Gillard and put Gillard in the back of the squad car. Officer Laurenzana testified that Gillard then asked for his belongings from the trunk of the car. When Officer Laurenzana retrieved Gillard's bag from the trunk, he opened it and found an orange prescription bottle of pills that was not in Gillard's name. Gillard explained the pills by saying that he worked at a club and found the pills in the bathroom. Officer Laurenzana also testified that, when he looked in the front of the car for Gillard's possessions, he found a small folded napkin containing a green substance resembling ecstasy tucked behind the sun visor. Gillard told Officer Laurenzana that he did not know anything about the napkin or what it contained.

After the search, Gillard was taken to the police station and charged with possession of a controlled substance and possession of methamphetamine[3] in violation of 720 ILCS 570/402(c) and 720 ILCS 646/60(a). He also received a ticket for disregarding traffic control signals. Gillard never contested the ticket—he claims he was incarcerated when the ticket was sent to him and he never received notice of a court date or otherwise had the opportunity to contest the ticket in a timely fashion. The drug charges were *nolle prosequi* after a motion to suppress was granted.

Prior to the trial in the instant case, the parties filed several motions *in limine*. Among the rulings, the Court held that the parties could inform the jury that Gillard was stopped for accelerating through a yellow light and that Gillard allegedly told Officer Laurenzana that he needed a knife for protection from gang members. In addition, the Court held that the parties

---

[3] Drug tests at the police station confirmed that the napkin contained methamphetamine and the pills were Vicodin.

would have to "sanitize" any reference to Gillard's prior murder conviction by referring to the offense as a "prior felony involving violence." The defendants were not permitted to mention any other previous arrests, accusations, or charges. The Court also held that Gillard could not introduce evidence of or seek damages for his criminal prosecution and incarceration in connection with the dismissed drug charges, as his claims did not include malicious prosecution and, under *Townes v. City of New York*, 176 F.3d 138 (1999), a plaintiff's damages for an unreasonable search and seizure are limited to the resulting invasion of privacy. *See id.* at 148–49. But the Court permitted Gillard to inform the jury that the charges against him were dropped.

The trial took place over the course of three days. During the trial, both sides objected to several statements made by opposing counsel or witnesses. The Court ruled on those objections consistent with the rulings on the various motions *in limine*. The jury then returned a verdict for Gillard but awarded him only $1.00 in compensatory damages and no punitive damages. Gillard seeks a new trial on damages only, citing various violations of the Court's pretrial motion *in limine* rulings. Gillard argues that statements made during trial regarding drugs found in his vehicle, his former gang affiliation, his prior incarceration for a violent felony conviction, and the dismissal of the drug charges prejudiced the jury against him—even if objections were sustained, remarks withdrawn, or the jury instructed to ignore the statements.

## DISCUSSION

Under Federal Rule of Civil Procedure 59, a court "may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A court may order a new trial "if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (quoting *David v.*

*Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003)). "In cases involving simple issues but highly disputed facts . . . , greater deference should be afforded the jury's verdict." *Whitehead v. Bond*, 680 F.3d 919, 925 (7th Cir. 2012) (quoting *Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995)). "[A] court will set aside a verdict as contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict." *Whitehead*, 680 F.3d at 928 (quoting *Marcus & Millichap Inv. Servs. of Chicago, Inc. v. Sekulovski*, 639 F.3d 301, 313–14 (7th Cir. 2011) (quotations omitted)). "We reverse a jury verdict for insufficient evidence only if, taking all evidence and reasonable inferences in favor of the prevailing party, no rational jury could have come to the verdict rendered." *Burzlaff v. Thoroughbred Motorsports, Inc.*, 758 F.3d 841, 849 (7th Cir. 2014).

## I. Sufficiency of the Evidence

As an initial matter, the mere fact that the jury returned a verdict in Gillard's favor but only awarded him nominal compensatory damages of $1.00 does not, in and of itself, indicate that the verdict was contrary to the manifest weight of the evidence.

Gillard testified at trial that on a scale of one to ten, with one being completely comfortable and ten completely uncomfortable, the search conducted by Officer Laurenzana was a "ten." And on a scale of one to ten, with one being not humiliating and ten being humiliating, the search was a "ten." (Tr. 307:7–18.) But Gillard did not provide any additional detail regarding why the search was completely uncomfortable and humiliating. To the contrary, Gillard testified that he did not experience any physical injuries, the officers did not call him names, he had not sought therapy regarding the incident, he had not spoken to anyone about it, he was not taking any medication as a result of the incident, and he was still "eating and sleeping fine." (Tr. 34:22–346:18.) Based on the evidence, it was reasonable for the jury to decide that, while the police did

4

not have probable cause to search Gillard, he was not harmed by the search or subsequent seizure. A rational jury might not have believed Gillard's testimony that the search was a "ten" in terms of discomfort or humiliation, given that he did not provide any additional information to support that assessment in the course of his testimony. *See Walker v. City of Chicago*, 513 Fed. Appx. 593, 595 (7th Cir. 2013) ("[W]e have held that 'when the injured party's own testimony is the only proof of emotional distress, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements.'") (quoting *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003)); *Taliferro v. Augle*, 757 F.2d 157, 162 (7th Cir. 1985) ("A plaintiff is not permitted to throw himself on the generosity of the jury. If he wants damages, he must prove them.").

## II. Evidentiary Rulings

Gillard further argues that certain statements during the trial were sufficiently prejudicial to warrant a re-trial. He points to references to his prior gang affiliation, the drugs found in his vehicle, his time served in prison for a "violent felony," and his time in custody for the charge in the underlying case and reason for its dismissal, as well as statements regarding the financial condition of the defendants and statements made to elicit sympathy for them.

Under Federal Rule of Evidence 103:

> A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and: (1) if the ruling admits evidence, a party, on the record: (A) timely objects or moves to strike; and (B) states the specific ground, unless it was apparent from the context; or (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

Fed. R. Evid. 103(a). The Court will grant a new trial "only if the error had a substantial influence over the jury, and the result reached was inconsistent with substantial justice. Evidentiary errors satisfy this standard only when a significant chance exists that they affected the outcome of the

trial." *EEOC v. Mgmt. Hosp. of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012) (quoting *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 564 (7th Cir. 2006); *Old Republic Ins. Co. v. Employers Reins. Corp.*, 144 F.3d 1077, 1082 (7th Cir. 1998) (citations omitted)). "[E]ven if a judge's rulings are found to be erroneous, they may be deemed harmless if the record indicates that the end result of the trial would have remained unchanged." *Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 942 (7th Cir. 2001).

### A. Gillard's Former Gang Affiliation

Gillard argues that mentioning his former gang affiliation to the jury unduly prejudiced the jurors against him. There was a motion *in limine* specifically addressing this evidence and the Court's ruling set parameters within which Gillard's gang affiliation could be disclosed to the jury. During opening statements, defense counsel referred to Gillard as "an individual who was in a violent street gang." (Tr. 296:1–5.) The jury also heard that Gillard told Officer Laurenzana he was a former member of the Gangster Disciples street gang, that the gang was dangerous, and that Gillard felt he needed to keep a knife on his person for protection.

The evidence regarding Gillard's gang affiliation was relevant to establish what Officer Laurenzana and Officer Molda knew at the time of the search. Officer Laurenzana testified that Gillard told him about his prior gang affiliation to explain why he had a knife on his person for protection. That information informed Officer Laurenzana's state of mind in deciding to conduct the search and therefore was properly presented to the jury. The admission of the evidence was proper and a new trial on damages is not warranted.

## B. Drugs in Gillard's Vehicle

During opening statements, defense counsel referenced drugs found in Gillard's car, stating "[w]ith a car full of drugs and a weapon at his side, the defendant [*sic*] saw that a light was about to change, and he went for it anyway." (Tr. 287:5–7.) Defense counsel later stated that "[w]hen he [Laurenzana] goes in, he finds a stash of meth in the area where the plaintiff has just been sitting." (Tr. 287: 22–24.) At this point, after the second reference to drugs in his car, Gillard's counsel objected. After a sidebar conference, the Court instructed defense counsel that he could argue that the officers believed they had found drugs but could not state that the items in question were actually drugs, since the officers did not know that at the time of the search and it therefore was not relevant as to whether the search and seizure was reasonable. The Court sustained Gillard's objection and allowed defense counsel to continue his opening argument. Later in opening argument, defense counsel referred to Gillard by stating he was "suing the officers for going into the car and finding what they believe[d] to be illegal narcotics. A crime that he thinks he should have gotten away with." (Tr. 292:11–14.) Gillard's counsel again objected, and defense counsel indicated he would "skip that" statement. (Tr. 292:16–17.) Defense counsel then stated that opposing counsel "maintains that the officers should not have found the drugs when they stopped the car," at which point Gillard's counsel objected, and defense counsel rephrased his statement as "they should not have found whatever they found in there to begin with." (Tr. 297:5–10.)

After the parties finished their opening statements, Gillard's counsel asked the Court to declare a mistrial. The Court denied the request, explaining that, "[t]his is a case about what the officers knew, what they believe[d], what they suspected at the time of the search. … So it

shouldn't turn on whether, in fact, a test comes back that shows that they are actually drugs." (Tr. 300:21–301:4.)

Later, during his cross-examination of Gillard, defense counsel inquired if Gillard ever learned what the pills were that Officer Laurenzana found in his car. Gillard stated that he did find out after he was arrested, but before he could continue, the Court interjected: "I'm going to stop this line of questioning right here and ask the parties for a sidebar." (Tr. 335:18–23.) The Court then instructed defense counsel that it was irrelevant whether Gillard found out later that the pills were Vicodin, and that they could only ask if Gillard knew what the pills were at the time of his arrest. Finally, during closing argument, defense counsel again referred to drugs found in Gillard's car; the Court interjected a warning that counsel should "be very cautious going forward in light of the prior discussions we have had at sidebar about how to address these issues." (Tr. 618:13–19.)

The Court finds that the statements concerning drugs found in Gillard's vehicle—whether considered individually or taken together—are insufficient to warrant a new trial on damages. The Court sustained objections regarding the statements and intervened when it appeared that defense counsel was about to elicit improper testimony. The Court also instructed the jury that the decision regarding whether the search and seizure was reasonable turned on the state of mind of the officers at the time. "While plaintiffs question whether this instruction sufficed to 'cure the prejudice,' the law assumes that jurors do as instructed unless there is substantial evidence to the contrary." *Altman v. Helgesen*, 2014 WL 4977699, at *2 (N.D. Ill. Oct. 6, 2014) (citing *United States v. Kibler*, 279 F.3d 511, 515 (7th Cir. 2002)); *see Christmas v. City of Chicago*, 682 F.3d 632, 639 (7th Cir. 2012) ("As a general rule we assume that the jury obeys the judge's instructions.") (quoting *Lopez v. Thurner*, 573 F.3d 484, 496 (7th Cir. 2009)). While defense

counsel pushed the limits set by the Court in discussing what the officers found at the time of the search, the Court remedied any potential prejudice by sustaining objections and giving proper curative jury instructions. There is nothing in the record to suggest that the jury failed to heed the Court's instruction.

### C. Gillard's Prior Incarceration

During cross-examination, defense counsel asked Gillard if at the time of the search and seizure he was "on parole for a violent felony?" Gillard responded that he was not on parole, and defense counsel then began to ask "You were released from —," which elicited an objection from Gillard's counsel. Defense counsel then asked if Gillard was convicted of a violent felony, to which Gillard responded, "Yes." (Tr. 331:5–11.) Officer Laurenzana also testified that Gillard told him "he had just been released from prison for committing a violent felony and feared retaliation from his gang." (Tr. 383:11–13.) And in closing argument, defense counsel referred to Gillard having just been released from jail for a violent felony.

The Court concludes that the statements regarding the timing of Gillard's release from jail do not warrant a new trial on damages. Officer Laurenzana testified that he recalled Gillard saying that he was "just released" from prison and feared retaliation from his former gang. And so that information was part of the circumstances known to the officer at the time of the search. *See United States v. Stotler*, 591 F.3d 935, 939–40 (7th Cir. 2010) (finding that police officers had probable cause to search a vehicle based on the totality of the circumstances, including the officers' knowledge of the driver's prior conviction). Nonetheless, in response to Gillard's objection, the Court instructed the jury to disregard the statement made during closing argument regarding the timing of Gillard's release. There is no reason to conclude that the jury did not follow the instruction.

### D. Gillard's Time in Custody on the Underlying Drug Charges

During cross-examination, defense counsel asked Gillard if after the search and seizure he was taken to a room at the police station. Gillard responded that he was, and defense counsel then asked, "But you don't know how long you were in that room for?" Gillard responded, "No, I wasn't looking at no clock. I didn't have a clock." Defense counsel pushed further, asking, "You don't know how long you were in that room with the police officers, do you?" (Tr. 326:6–13.) At that point, the Court sustained an objection from Gillard's counsel. After a sidebar conference, defense counsel agreed to forego additional references to the time Gillard spent in a room at the police station.

Gillard claims that his testimony suggesting that he could not remember the time he spent in custody led the jury to believe that he was not damaged much at all. But the cited testimony provided no basis for the jury to conclude one way or the other whether Gillard was only in custody at the police station for a short time. More importantly, as the Court ruled at the motion *in limine* stage, evidence as to Gillard's "criminal prosecution, incarceration, or collateral consequences thereof" was not relevant for damages purposes under *Townes v. City of New York*, 176 F.3d 138, 148–49 (2d Cir. 1999), as explained in *Gauger v. Hendle*, 349 F.3d 354, 363 (2003) (*overruled on other grounds by Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006); *Williams v. Carroll*, No. 08 C 4169, 2010 WL 5463362, at *4 (N.D. Ill. 2010). (Dkt. No. 92 at 8.) Such damages are not appropriate for a search-and-seizure claim; and since Gillard did not have a malicious prosecution claim, evidence of such damages was appropriately excluded from the trial and the jury properly instructed not to consider it. To the extent Gillard is concerned that his lack of memory regarding the details of the incident might have damaged his credibility, the jury could

properly consider such information for that purpose and Gillard's counsel could have attempted to rehabilitate his credibility on re-direct.

Gillard further argues that defense counsel improperly raised the subject of Gillard not knowing "how [he] beat the case," but he knew he "beat the case." Gillard testified in response, "It was dismissed. Yes." (Tr. 344:4–15.) The jury was properly instructed that dismissal of the underlying charges is not relevant as to whether the officers had probable cause at the time of the search and seizure, and the Court therefore finds that these brief statements do not warrant a new trial on damages.

### E. Defendant's Financial Condition

During opening statements, defense counsel stated that "[t]he plaintiff wants these officers to pay him out of their own pockets." (Tr. 290:8–9.) Gillard's counsel objected, and the Court held a sidebar conference. The Court informed the parties that any further suggestion by defense counsel that the defendant officers would be paying any damages award out-of-pocket would result in the jury receiving a written instruction regarding the officer's indemnification by the City for compensatory damages. The Court ultimately did instruct the jury regarding indemnification by the City for compensatory damages, and neither side objected to the instruction that was given. "A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1); *see Schobert v. Illinois Dept. of Transp.*, 304 F.3d 725, 729 (7th Cir. 2002) ("[A]ny party wishing to contest a jury instruction must distinctly state the matter objected to and the ground of the objection."). That did not occur here. Thus, Gillard cannot raise an objection to the instruction that was given.

Lastly, Gillard's counsel complains about a statement made in defense counsel's closing argument regarding Officer Molda asking her counsel what she needed to do to defend herself in federal court. The Court sustained the objection at the time and reminded the jury that Officer Molda was no longer a defendant in the case. While the statement by defense counsel may have been improper, it did not rise to the level of warranting a new trial on damages, especially given that Officer Molda was no longer a defendant in the case and the Court sustained the objection in real time.

## CONCLUSION

For the reasons explained above, the Court finds that the jury's award of $1.00 in compensatory damages but no punitive damages was not contrary to the manifest weight of the evidence. Furthermore, none of the transgressions by defense counsel identified by Gillard was sufficiently prejudicial to warrant a new trial, particularly given that any errors were cured by sustained objections and instructions to the jury. Gillard's motion for a new trial on damages is therefore denied.

ENTERED:

Dated: October 9, 2018

Andrea R. Wood
United States District Judge